IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


TIMOTHY PENNINGTON,

      Plaintiff,


vs.                          Case No. 10-3241-JTM


DAVID MCKUNE,

      Defendant.


MEMORANDUM AND ORDER

This matter is before the court on petitioner Timothy Pennington's Habeas Corpus Petition Under 28 U.S.C. § 2254 (Dkt. No. 1). A jury found Mr. Pennington guilty of first degree murder, burglary, attempted theft, and criminal damage to property, and the court sentenced him to life imprisonment plus 29 months. He challenges his conviction and incarceration in this petition by asserting ineffective assistance of trial counsel. The question this court must answer is whether his state court conviction was contrary to, or involved an unreasonable application of clearly established Supreme Court precedent. Because the state courts did not unreasonably apply Supreme Court precedent regarding Mr. Pennington's ineffective assistance of counsel claims, this court denies his petition for relief.


**I. Factual Background and Procedural History**

The Kansas Supreme Court stated the following facts regarding Mr. Pennington's conviction

and sentence, which he does not dispute:

>  A neighbor observed two men enter Gary Whitaker's house at approximately midnight. The neighbor thought she recognized one of the men as someone she had seen at Whitaker's house with a woman named Shannon Hopkins. After observing the house for a few minutes, the neighbor and a friend called the police. When the police arrived and searched the house, two men jumped from a second story window and ran. Police apprehended one of the men, Timothy Pennington, near the house and returned him to the house for identification by Whitaker's neighbors. The neighbor who had seen the men enter the house identified Pennington as the burglar, and the police arrested Pennington for burglary. The State later charged Pennington with burglary, attempted misdemeanor theft, and criminal damage to property.
>
>  Before leaving Whitaker's house, the police checked it again to make sure it was clear and found Whitaker's body in the basement. Whitaker had been strangled with an electrical cord, and his throat was cut.
>
>  While Pennington was in jail on the burglary charges, he admitted to several other inmates that he had killed Whitaker because he was jealous about Whitaker's suggestion that Pennington's girlfriend, Hopkins, make pornographic videos for the internet. One of Pennington's fellow inmates approached police and offered to provide information about Whitaker's murder. Police asked the inmate to get more information, and he agreed to cooperate with the police. Pennington readily discussed the murder with the inmate, who informed the police of Pennington's confession.
>
>  After receiving the information from the jailhouse informant, the State charged Pennington with first-degree murder for Whitaker's death. Ultimately, the State consolidated the murder charge with the burglary, attempted theft, and criminal damage to property charges. A jury found Pennington guilty of all of the charges. Pennington appeals.

*State v. Pennington* (*Pennington I*), 276 Kan. 841, 843, 80 P.3d 44, 47 (2003). On August 27, 2001,

a jury found Mr. Pennington guilty of first degree murder, burglary, attempted theft, and criminal

damage to property, and the court sentenced him to life imprisonment plus 29 months. The Kansas

Supreme Court affirmed. On November 18, 2004, Mr. Pennington filed for post-conviction relief

under Kan. Stat. Ann. § 60-1507, in Shawnee County, Kansas District Court claiming ineffective

assistance of trial and appellate counsel. The district court denied his motion, and he appealed. The

Kansas Court of Appeals affirmed, and the Kansas Supreme Court denied his petition for

discretionary review on September 7, 2010. Thereafter, he filed this application for federal habeas

corpus relief on December 1, 2010. Mr. Pennington has exhausted his state remedies, and his

petition is timely.

**II. Legal Standard: 28 U.S.C. § 2254**

Under the Antiterrorism and Effective Death Penalty Act "a federal court may grant a state

prisoner's application for a writ of habeas corpus if the state court adjudication pursuant to which

the prisoner is held 'resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States.'" *Howes v. Fields*, —S. Ct.—, 2012 WL 538280, at *5 (2012) (quoting 28 U.S.C. §

2254(d)(1)). A state court decision is "contrary to" clearly established precedent if it "applies a rule

that contradicts the governing law set forth in [United States Supreme Court] cases" or "confronts

a set of facts that are materially indistinguishable from a decision of the Court and nevertheless

arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000) (alterations added). When Supreme Court decisions "give no clear answer to the question

presented . . . 'it cannot be said that the state court unreasonably applied clearly established Federal

law.'" *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quoting *Carey v. Musladin*, 549 U.S. 70, 77

(2006)).

If the state courts correctly identified the governing legal principle, this court must decide

whether the state courts' application of established federal law was objectively unreasonable. *See

Bell v. Cone*, 535 U.S. 685, 694 (2002); *Williams*, 529 U.S. at 409. Even if this court concludes the

Kansas courts applied the law incorrectly, relief is appropriate only if the application is also

"objectively unreasonable." *Id.* at 411.

> As to this prong, the ultimate focus of the inquiry is whether the state court's application of the clearly established federal law is objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Consequently, the Supreme Court has concluded that although this standard does not require all reasonable jurists to agree that the state court was unreasonable, an unreasonable application constitutes more than an incorrect application of federal law. *Williams*, 529 U.S. at 377, 410, 120 S.Ct. 1495; *see Andrade*, 538 U.S. at 75, 123 S.Ct. 1166 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (internal quotation marks omitted)). In addressing the objective unreasonableness standard, we have determined that the AEDPA's conception of objective unreasonableness lies "somewhere between clearly erroneous and unreasonable to all reasonable jurists." *Maynard*, 468 F.3d at 670. Thus, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.* at 671.

*House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008).

Under subsection (d)(2), governing factual error, this court may also grant relief if the state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The standard 'is demanding, but not insatiable . . . [as] deference does not by definition preclude relief.'" *House*, 527 F.3d at 1019 (quoting *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)).

### III. Legal Analysis

Mr. Pennington contends his trial counsel was ineffective in two respects: (1) for failing to

challenge the jailhouse informant testimony, and (2) for conceding that he was guilty of burglary.

Although the Kansas appellate courts did not explicitly cite *Strickland v. Washington*, it is clear they

applied that case when considering Mr. Pennington's ineffective assistance claims. Because the state

courts applied the correct standard, this court must only determine whether they applied *Strickland*

unreasonably. *See Cone*, 535 U.S. at 694; *Williams*, 529 U.S. at 409.

In order to prevail on an ineffective assistance of counsel claim, *Strickland* requires that "the

defendant must show that counsel's performance was deficient . . . [and] the defendant must show

that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687

(1984) (alterations added). An attorney must give reasonably effective assistance in light of

prevailing professional norms. *Id.* at 687-88. The burden is on the defendant to show that the

attorney's "representation fell below an objective standard of reasonableness." *Id.* at 688. This

means that a petitioner must allege specific and particularized instances of ineffective representation;

"'[c]onclusory allegations will not suffice to warrant a hearing.'" *Hatch*, 58 F.3d at 1457 (quoting

*Andrews v. Shulsen*, 802 F.2d 1256, 1266 (10th Cir. 1986)).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 694. Prejudice exists if counsel's acts or omissions "would have raised in a

juror's mind a reasonable doubt concerning his guilt." *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th

Cir. 2004) (citing *Strickland*, 466 U.S. at 694-95).


*A. Jailhouse Informant Testimony*

First, Mr. Pennington contends his trial counsel was ineffective for not challenging the testimony of the jailhouse informant. Specifically, he contends counsel was ineffective for failing to raise a Fifth and Sixth Amendment challenge, and for failing to request a *Jackson v. Denno* hearing to determine if his jailhouse confession was voluntary. Mr. Pennington also contends the state courts unreasonably applied clearly established federal law when they denied his previously filed appeal and state post conviction motions.

1. Jailhouse Informant Testimony and the Fifth Amendment

Mr. Pennington's first argument is that his trial counsel was ineffective for failing to challenge the jailhouse informant's testimony as a violation of his Fifth Amendment rights. The Kansas Court of Appeals addressed this argument when it reviewed the district court's denial of Mr. Pennington's state habeas petition. Relying on *Illinois v. Perkins*, 496 U.S. 292 (1990) the court found Mr. Pennington's confession to the jailhouse informant did not render Mr. Pennington's confession involuntary because *Miranda* was not meant to protect inmates when confessing to other inmates. *Pennington v. State*, (*Pennington II)*, 2009 WL 3172731, at \*3 (Kan. Ct. App. 2009). In *Perkins*, the Supreme Court stated:

> In *Miranda v. Arizona, supra*, the Court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "custodial interrogation" without a prior warning. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody. . . ." *Id.* 384 U.S., at 444, 86 S.Ct., at 1612. The warning mandated by *Miranda* was meant to preserve the privilege during "incommunicado interrogation of individuals in a police-dominated atmosphere." *Id.*, at 445, 86 S.Ct., at 1612. That atmosphere is said to generate "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.*, at 467, 86 S.Ct., at 1624. "Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated.*"*

*Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317 (1984).

Conversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*. The essential ingredients of a "police-dominated atmosphere" and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate. Coercion is determined from the perspective of the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); *Berkemer v. McCarty, supra*, 468 U.S., at 442, 104 S.Ct., at 3151. When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking. *Miranda*, 384 U.S., at 449, 86 S.Ct., at 1614 ("[T]he 'principal psychological factor contributing to a successful interrogation is privacy—being alone with the person under interrogation' "); *id.*, at 445, 86 S.Ct., at 1612. There is no empirical basis for the assumption that a suspect speaking to those whom he assumes are not officers will feel compelled to speak by the fear of reprisal for remaining silent or in the hope of more lenient treatment should he confess.

. . .

*Miranda* was not meant to protect suspects from boasting about their criminal activities in front of persons whom they believe to be their cellmates. This case is illustrative. Respondent had no reason to feel that undercover agent Parisi had any legal authority to force him to answer questions or that Parisi could affect respondent's future treatment. Respondent viewed the cellmate-agent as an equal and showed no hint of being intimidated by the atmosphere of the jail. In recounting the details of the Stephenson murder, respondent was motivated solely by the desire to impress his fellow inmates. He spoke at his own peril.

The tactic employed here to elicit a voluntary confession from a suspect does not violate the Self–Incrimination Clause.

496 U.S. at 296-98; *see also United States v. Cook*, 599 U.S. 1208, 1214-15 (10th Cir. 2010)

(holding defendant's confession to an undercover agent was not custodial and did not require

*Miranda* warnings) (citing *Perkins*, 496 U.S. at 296-97).

Here, Mr. Pennington was convicted, in part, based on his confession to a jailhouse

informant who testified that Mr. Pennington confessed to the murder. As noted above, such a

confession does not fall under *Miranda's* purview and does not violate the Fifth Amendment. Thus,

Mr. Pennington's counsel was not ineffective for failing to raise this argument. And the Kansas

Court of Appeals's interpretation of the applicable federal law was not unreasonable. Therefore, Mr.

Pennington's Fifth Amendment challenge fails.

### 2. Jailhouse Informant Testimony and the Sixth Amendment

Next, Mr. Pennington argues trial counsel was ineffective for failing to challenge the jailhouse informant testimony as a violation of his Sixth Amendment right to counsel. The Kansas Supreme Court found no violation. First, the court recognized that the Sixth Amendment right to counsel is offense specific, and does not attach to uncharged offenses. *Pennington I*, 276 Kan. at 845-46, 80 P.3d at 48-49. Determining whether an offense has been charged requires "evaluating whether each offense requires proof of a fact that the other does not." *Id.* at 845-46, 80 P.3d at 49 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)). "Previously charged offenses do not include new or different offenses that are factually related to the previously charged offenses unless the newly charged offenses pass the *Blockburger* test." *Id.* Relying on a factually similar case, *Texas v. Cobb*, 532 U.S. 162 (2001), the Kansas Supreme Court held "Pennington's confession through the jailhouse informant did not violate his Sixth Amendment right to counsel, and the trial court did not abuse its discretion when it admitted the jailhouse informant's testimony." *Pennington I*, 276 Kan. at 846, 80 P.3d at 49.

In *Cobb*, the defendant was charged with burglary. 532 U.S. at 165. While out on bond he confessed to his father that he had murdered the residents of the house he burglarized. *Id.* The father informed the police, and the police brought in the defendant for questioning. *Id.* After waiving his *Miranda* rights, the defendant confessed to the murders and was ultimately convicted. *Id.* at 165-66. The Supreme Court applied the *Blockburger* test and held that defendant's Sixth Amendment right to counsel was not violated when he confessed to the murder after being charged with the burglary.

*Id.* at 172-73. The court reasoned that even though the burglary and murder arose from the same set of facts, both crimes required proof of different elements. *Id.* Applying *Cobb*, the Kansas Supreme Court stated:

> The same result occurs when the *Blockburger* test is applied to the charges of burglary and murder in Kansas. Burglary and murder require proof of different facts. We conclude that Pennington's Sixth Amendment right to counsel had not attached as to the murder charge when the jailhouse informant cooperated with police to solicit a confession from Pennington, although this was after Pennington had been charged with burglary. Consequently, Pennington's confession through the jailhouse informant did not violate his Sixth Amendment right to counsel, and the trial court did not abuse its discretion when it admitted the jailhouse informant's testimony.

*Pennington I*, 276 Kan. at 846, 80 P.3d at 49.

This court finds that the Kansas Supreme Court applied the correct federal law and did so reasonably. Mr. Pennington confessed to the murder on May 30, 2000. At the time, he was being held on the burglary charge only. The jailhouse informant gave this information to the police on June 2, and June 5. Mr. Pennington was charged with murder on June 6. Because burglary and murder require proof of different elements, Mr. Pennington's Sixth Amendment right to counsel had not attached on the murder charge at the time he confessed and admitting his confession through the jailhouse informant did not violate that right. Consequently, Mr. Pennington's Sixth Amendment argument fails.

### 3. *Jackson v. Denno* Hearing

Mr. Pennington's last argument relating to the jailhouse informant testimony is that his counsel was ineffective for failing to request a *Jackson v. Denno* hearing to determine if the confession was voluntarily made. The Kansas Court of Appeals rejected his ineffective assistance of counsel claim on this ground because it was premised on the assumption that Mr. Pennington's

statements should have been suppressed on Fifth Amendment grounds. And because the court found

the Fifth Amendment did not bar the testimony, counsel was not ineffective for failing to request a

*Jackson v. Denno* hearing.

This court agrees. Mr. Pennington's Fifth Amendment rights were not violated when the

court admitted the confession. Therefore, counsel's decision not to ask for a *Jackson v. Denno*

hearing was reasonable and did not constitute ineffective assistance of counsel. Mr. Pennington's

motion is denied on this ground.

### B. Conceding Guilt on the Burglary Count

Last, Mr. Pennington contends his counsel was per se ineffective when he conceded guilt on

the burglary charge. Mr. Pennington raised this argument for the first time in his state habeas

petition. The Kansas Court of Appeals concluded:

> The police captured Pennington during his flight from the burglary, and an
> eyewitness identified him at the scene minutes later. At trial, Pennington's counsel
> conceded the inevitable with respect to the burglary but did not admit Pennington's
> participation in the homicide which happened days earlier, in the reasonable
> expectation that doing so would lend credence, to some degree, to Pennington's
> not-guilty plea to the murder. Pennington acquiesced to this trial strategy by failing
> to object to it at any time before the filing of the instant motion, several years after
> his conviction. Pennington bore the burden of alleging in his motion facts sufficient
> to warrant a hearing. *See Woodberry v. State*, 33 Kan.App.2d 171, 173, 101 P.3d
> 727, *rev. denied* 278 Kan. 852 (2004). Nothing in the record or in Pennington's
> motion supports the notion that Pennington's trial counsel betrayed him or overrode
> his desire to pursue a different trial strategy.

*Pennington II*, 2009 WL 3172731, at \*1. In reaching that conclusion, the court relied on its decision

in *Plakio v. State*, 2007 WL 1309822 (Kan. Ct. App. 2007), and distinguished the Kansas Supreme

Court's ruling in *State v. Carter*, 270 Kan. 426, 14 P.3d 1138 (2000).

In *Carter*, the Kansas Supreme Court held that counsel was per se ineffective for conceding

a defendant's guilt to premeditated murder when the defendant voiced his disagreement with that strategy several times to counsel and to the court. 270 Kan. at 441, 14 P.3d at 1148. The defendant in *Carter* was charged with felony murder, or in the alternative, first-degree premeditated murder. *Id.* at 429, 14 P.3d at 1141. After the jury had been selected, Carter informed the court he did not wish to proceed with his counsel's guilt-based defense on the felony murder charge. *Id.* at 429-30, 14 P.3d at 1142. The court gave him the option of proceeding with counsel or representing himself. *Id.* at 430, 14 P.3d at 1142. The defendant reluctantly chose to proceed with counsel. *Id.* at 431, 14 P.3d at 1142-43. Throughout the trial he made it known that he did not agree with counsel's strategy and was ultimately removed from the courtroom for voicing his displeasure. *Id.* at 432-33, 14 P.3d at 1143. On appeal the court held that counsel had violated the defendant's Sixth Amendment right to counsel by pursuing a guilt-based defense in spite of the defendant's wishes. *Id.* at 440-41, 14 P.3d at 1148. The court held that such a strategy deprived the defendant of his decision to plead not guilty to the premeditated murder charge and relieved the state of its burden on that charge. *Id.* Therefore, following the Supreme Court's ruling in *United States v. Chronic*,[1] the court held counsel was "inherently prejudicial, and no separate showing of prejudice was required." *Id.* at 441, 14 P.3d at 1148.

Distinguishing *Carter*, the Kansas Court of Appeals in *Plakio* held that defense counsel was not ineffective for conceding guilt on one charge of criminal possession of a firearm in an effort to defend against the more serious charge of criminal discharge of a firearm at an occupied dwelling

---

[1]In *United States v. Chronic*, 466 U.S. 648, 661-62 (1984), issued the same day as *Strickland v. Washington*, the United States Supreme Court stated that in certain circumstances there may be a presumption of ineffectiveness on a Sixth Amendment claim without looking into counsel's actual performance or specifically determining prejudice. Some examples the court gave were (1) complete denial of counsel, (2) "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing", or (3) surrounding circumstances in which it is so unlikely that any lawyer could provide effective assistance. *Id.* at 659-61.

resulting in great bodily harm. 2007 WL 1309822, at \*4-5. First, unlike *Carter*, the defendant in

*Plakio* never objected to defense counsel's strategy until his state habeas proceeding. *Id.* at \*4.

Second, the court stated that "'[w]here trial counsel concedes guilt on a few charges in a multiple-

count case, in light of overwhelming circumstantial evidence and in an effort to gain credibility and

win acquittal on the other charges, the concession may be a reasonable tactical decision and counsel

is not necessarily deemed to have been constitutionally ineffective for doing it.'" *Id.* (quoting *Martin*

*v. State*, No. 93,615 (Kan. Ct. App. 2006)).

In reviewing Mr. Pennington's habeas petition, the Kansas Court of Appeals concluded that

*Plakio* controlled rather than *Carter*. This court concludes that the Kansas Court of Appeals did not

unreasonably apply federal law in doing so. First, unlike the defendant in *Carter*, and similar to the

defendant in *Plakio*, Mr. Pennington never objected to his counsel's decision to concede guilt on the

burglary charge, and he admits this fact in his petition. Had Mr. Pennington objected to counsel's

strategy of conceding guilt, the result here may be different. Second, the police captured Mr.

Pennington fleeing from the burglary, and an eyewitness identified him at the scene minutes later.

As the Kansas Court of Appeals concluded, conceding the inevitable with respect to the burglary

charge was reasonable, and was specifically directed toward avoiding a guilty verdict on the murder

charge. Such a tactic is common in defending multiple count cases. *See, e.g.*, *United States v.*

*Pledger*, 887 F. Supp. 1400, 1406-07 (D. Kan. 1995).

An attorney must consult his client regarding "important decisions," including questions of

overall defense strategy. *Strickland*, 466 U.S. at 688. But that obligation does not require counsel

to obtain the client's consent for "every tactical decision." *Taylor v. Illinois*, 484 U.S. 400, 417-18

(1988). On the present facts, this court cannot conclude that defense counsel was ineffective, or that

the Kansas Court of Appeals incorrectly applied *Strickland* based on counsel's decision to concede guilt on the burglary charge. Therefore, Mr. Pennington's petition fails on this ground.

### IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the movant must demonstrate that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). While a movant is not required to demonstrate that his appeal will succeed to be entitled to a COA, he must "prove something more than the absence of frivolity or the existence of mere good faith." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quotation omitted). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* at 336. The rulings made above are not the type that reasonable jurists could debate or would conclude were wrong. Therefore, the court will not issue a certificate of appealabilty for this Order.

IT IS ACCORDINGLY ORDERED this 7th day of March 2012, that Timothy Pennington's Habeas Corpus petition under 28 U.S.C. § 2254 (Dkt. No. 1) is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE